[Cite as *In re L.P.*, 2017-Ohio-52.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: L.P. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | |
| | : | Case No. CT2016-0045 |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Muskingum County
                            Court of Common Pleas, Juvenile Division,
                            Case No. 21430014

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     January 6, 2017

APPEARANCES:

For - Appellee                      For - Appellant

TRAFFORD DICK                       PETER N. CULTICE
27 North Fifth Street               58 North Fifth Street
Zanesville, OH 43701                Zanesville, OH 43701

*Gwin, P.J.*

{¶1}    Appellant Mother appeals the July 14, 2016 Judgment Entry of the Muskingum County Court of Common Pleas, Juvenile Division, granting legal custody of L.P. to the maternal aunt.

*Facts and procedural History*

{¶2}    On or about January 21, 2014 a Complaint was filed with this Muskingum County Juvenile Court alleging that L.P. was  a Dependent children, as defined in R.C. 2151.04 (C) and Neglected child, as defined in R.C. 2151.03 (A)(2).

{¶3}    The allegations were based on the drug use of Mother, specifically methamphetamine.   Muskingum County Children's Services ["MCCS"] withdrew the allegation of neglect and Mother admitted to the allegation of dependency on April 10, 2014.  See, Judgment Entry dated April 10, 2014.  Father was never involved.

{¶4}    On or about April 10, 2014, the child was placed in the temporary custody of a relative following a Dispositional Hearing.  At the Dispositional Hearing, Mother and Father were granted only supervised visitation with the Children at Muskingum County Children Service's discretion.

{¶5}    On or about October 20, 2014, a review hearing was held and the child was placed in the temporary custody of the Muskingum County Children Service's.  At the hearing, the Court specifically found that Mother continued to miss required drug screens and/or substance abuse treatment sessions, this despite her transportation issues having been alleviated.  The Court further found Mother had made little/limited progress in her required treatment.  MCCS specifically requested that the Court approve their amended

Permanency Plan, which added, in addition to Reunification, the possibility for Permanent Custody to the Agency.

{¶6} On or about February 25, 2015, a review hearing was held. The Court found Mother continued to miss required drug screens, drug treatment (she had at that time been unsuccessfully discharged from Muskingum Behavioral Health on at least 2 occasions for failing to participate), failed to regularly visit the child.

{¶7} On or about July 9, 2015, MCCS filed an Amended Motion to Modify Review Hearing to include a Motion for Legal Custody of the Children to Maternal Aunt.

{¶8} On or about July, 16, 2015 the Court conducted a hearing on the Review and Motion for Legal Custody. In addition to the parties, Maternal Aunt was present and did participate at said hearing. By agreement of the parties, the child was placed in the temporary custody of Maternal Aunt and the Legal Custody Motion was continued.

{¶9} On or about March 24, 2016, the Court conducted a Review hearing. At said hearing, it was represented to the Court that prior to the date of the hearing the parties had been in agreement that Maternal Aunt receive Legal Custody of the child. It was further represented to the Court that the parties did not agree now and that the Legal Custody Motion would need to be set for a different/new hearing date as no parties were prepared to litigate the now contested issue of legal custody. In addition to the parties, Maternal Aunt was present and did participate at said hearing. The matter was then set for a contested hearing.

{¶10} A legal custody hearing took place on July 16, 2015, but temporary custody was granted instead to Maternal Aunt, with the agreement and consent of Mother and a review hearing then was scheduled. See Judgment Entry dated July 16, 2015. This review

hearing was scheduled for March 24, 2016, but was then continued with the consent of all parties. See, Judgment Entry dated March 24, 2016. Mother and Maternal Aunt were present at each hearing.

{¶11} The legal custody hearing was subsequently scheduled for July 14, 2016. On July 7, 2016, through her attorney, Mother requested a continuance of the July 14, 2016, legal custody hearing. The court denied the request.

{¶12} Mother did not attend nor did father attend the legal custody hearing of July 14, 2016. Since Mother did not attend the legal custody hearing and neither father chose to attend, the only witness who testified was Elizabeth Glass, MCCS ongoing caseworker.

{¶13} Mother, had enrolled in five separate substance abuse treatment programs (both in-patient and outpatient) and has failed to successfully complete each one of them. The names of the programs are as follows; Muskingum Behavioral Health; Stanton Villa; First Step Home; Freedom House; and Buckeye Counseling Center. The last documented drug test of Mother occurred on December 16, 2015 and she again tested positive for amphetamines and methamphetamines. Mother was Court ordered to submit to a hair follicle test and MCCS caseworker Elizabeth Glass offered to transport Mother to the facility for the testing and Mother refused.

{¶14} Mother had moved to Alabama in December 2015. Alabama is where the Maternal Aunt lives and is where the child has been since July 16, 2015.

{¶15} The Maternal Aunt of the child did not attend the legal custody hearing, but had signed the Statement of Understanding for Legal Custody on May 1, 2016. MCCS had no issue with the aunt having legal custody since temporary custody had gone well for almost a year. Legal custody was awarded to the maternal aunt on August 18, 2016.

*Assignments of Error*

{¶16} Counsel for Mother has filed a Motion to Withdraw and a brief pursuant *to Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493(1967) asserting that the appeal is wholly frivolous and setting forth no assignments of error.

*Law and Analysis*

{¶17} In *Anders*, the United States Supreme Court held if, after a conscientious examination of the record, a defendant's counsel concludes the case is wholly frivolous, then he should so advise the court and request permission to withdraw. 386 U.S. at 744. Counsel must accompany his request with a brief identifying anything in the record that could arguably support his client's appeal. Id. Counsel also must: (1) furnish his client with a copy of the brief and request to withdraw; and, (2) allow his client sufficient time to raise any matters that the client chooses. Id. Once the defendant's counsel satisfies these requirements, the appellate court must fully examine the proceedings below to determine if any arguably meritorious issues exist. If the appellate court also determines that the appeal is wholly frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or may proceed to a decision on the merits if state law so requires. Id.

*Appellate Review*

{¶18} Before awarding legal custody to a non-parent, a trial court must ordinarily make a finding that each parent is unsuitable. *In re L.M.*, 2nd Dist. Greene No. 2010–CA–76, 2011–Ohio–3285, ¶ 18 *citing In re Hockstock*, 98 Ohio St.3d 238, 2002–Ohio–7208, 781 N.E.2d 971. This requirement does not apply, however, in cases involving abuse, neglect, or dependency. Id. The Ohio Supreme Court in *In re C.R.* held "[a] juvenile court adjudication of abuse, neglect, or

dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188, paragraph one of syllabus. Thus, "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." *In re L.M.*, 2011–Ohio–3285 quoting In re C.R., 108 Ohio St.3d 369, paragraph two of syllabus.

{¶19}  Importantly, the award of legal custody is "not as drastic a remedy as permanent custody." *In re L.D.,* 10th Dist. No. 12AP–985, 2013–Ohio–3214, ¶ 7. *See also In re N.F.,* 10th Dist. No. 08AP–1038, 2009–Ohio–2986, ¶ 9. This is because the award of legal custody does not divest parents of their residual parental rights, privileges, and responsibilities. *In re C.R.* at ¶ 17. Therefore, since the granting of legal custody does not divest a parent of his or her fundamental parental rights, the parent can petition the court for a custody modification in the future. *In re L.D.* at ¶ 7.

{¶20}  "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen,* 129 Ohio St.3d 417, 2011–Ohio–3361, ¶ 14. We review the award of legal custody for an abuse of discretion. *In re L.D.* at ¶ 8; *In re Gales,* 10th Dist. No. 03AP–445, 2003–Ohio–6309, ¶ 13; *In re N.F.,* 10th Dist. No. 08AP–1038, 2009–Ohio–2986, ¶ 9, citing *In re Nice,* 141 Ohio App.3d 445, 455 (7th Dist.). Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶21}  Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.*, 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-

Ohio-5752, ¶ 32; In *re A.C.,* 12th Dist. No. CA2006–12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

{¶22}   In this type of dispositional hearing, the focus is on the best interest of the child.  *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188; *In re P.S.,* 5th Dist. No.2012CA00007, 2012–Ohio–3431.  Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, citing *In re T.A.,* 9th Dist. No. 22954, 2006–Ohio–4468 at ¶ 17; *In re S.D.* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752, ¶ 33 .  R.C. 2151.414(D) sets forth factors to be considered in making a determination regarding the best interest of the child.

{¶23}   Concerning the best interest of the child, the trial court found,

The Children have lived exclusively in the home of Maternal Aunt for a significant period of time and have been incorporated as part of her family.

Maternal Aunt's source of income consists of tax return preparation and selling of antiques.  Maternal Aunt has sufficient resources to provide for all of the Children's special and ordinary needs.

Maternal Aunt has worked with special needs individuals, she has identified legitimate concerns about the Children's development; and had the Children evaluated by experts, and then took the necessary steps to ensure the Children received therapy and/or special education services as needed.

Maternal Aunt has done an excellent job of providing for the Children's needs while in her care and/or custody.  She has enrolled [L.P.] in pre-school and, has her

prepared to be enrolled in kindergarten next school year. She has enrolled [M.P.] in a special needs pre-school which has been providing him with speech therapy. Muskingum County Children Services Caseworker, Elizabeth Glass, opined that [M.P.'s] speech has improved since went to live with Maternal Aunt.

The home of Maternal Aunt was inspected and was approved by a home study conducted by Ms. Carolyn Blackwood, of Muskingum County Children Service's which has been previously filed with this Court. The Court finds that Ms. Ingram has resided in this home for fourteen years and that it has adequate facilities to provide for the children's needs and that they are adjusted to the home, the surrounding environment and the family members in the home.

The Mother has relocated her residence to the same county in Alabama as where Maternal Aunt resides so as to facilitate visitation with the Children.

The Mother has had visitation in Alabama with the Children under the supervision and by arrangements of Maternal Aunt.

* * *

The Guardian ad Litem believes that it is in the best interests of the Children that Legal Custody of the minor children [L.P.] and [M.P.] be granted to Maternal Aunt. The guardian ad Litem has submitted a written report in accordance with the Rules of Superintendence of the Ohio Supreme Court.

Muskingum County Children Service's Caseworker, Elizabeth Glass, recommends as being in the best interest of the Children that the Children remain in the care and custody of the Maternal Aunt.

{¶24} Counsel in this matter has followed the procedure in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493(1967), we find the appeal to be wholly frivolous and grant counsel's motion to withdraw.

{¶25} After independently reviewing the record, we agree with counsel's conclusion that no arguably meritorious claims exist upon which to base an appeal. Hence, we find the appeal to be wholly frivolous under *Anders,* grant counsel's request to withdraw, and affirm the judgment of the Muskingum County Court of Common Pleas, Juvenile Division.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur