[Cite as *B.A. v. C.C.*, 2021-Ohio-3719.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| B. A. | JUDGES:<br>Hon. John W. Wise, P. J. |
|     Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2021 AP 02 0006 |
| C. C. | |
|     Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common
Pleas, Juvenile Division, Case No. 2019 CC
00080

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    October 18, 2021

APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant

JAMES J. ONG    DAN GUINN
201 North Main Street    GUINN LAW FIRM, LLC
Uhrichsville, Ohio  44683    232 West 3rd Street, Suite 312
    Dover, Ohio  44622

*Wise, John, P. J.*

**{¶1}** Appellant C.C. appeals the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted legal custody of Appellant's minor children. Appellee is B.A., the minor children's paternal grandmother. The relevant facts leading to this appeal are as follows.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant and J.A. are the biological parents of minor children H.A. and H.A. Appellee is paternal grandmother of the minor children.

**{¶3}** On April 2, 2019, Appellee filed a Complaint for Custody of the minor children with the trial court. Appellee moved the trial court to designate her as legal custodian of the minor children.

**{¶4}** On September 21, 2020, Appellee's Complaint proceeded to trial.

**{¶5}** At trial Mary Beth Markley, a supervisor of community counseling at Ohio Guidestones, testified Appellant completed parenting classes starting in June of 2019. Markley continued she remembered nothing negative about Appellant. She only remembered her attendance at the program.

**{¶6}** Next, Samantha Barone, a probation officer with the Tuscarawas County Southern District Court, testified Appellant was on probation in 2019 for a disorderly conduct charge. As part of probation, Appellant was required to complete random drug screens, participate in review hearings, complete thirty hours of community service, and complete a mental health evaluation. Appellant completed her one-year probation in four months.

**{¶7}** On cross-examination, Barone noted she never observed Appellant with her children. Barone also noted that the disorderly conduct charge had been amended from a child endangerment charge.

**{¶8}** Next, Appellant testified H.A. was born on November 16, 2016, and H.A. was born on October 18, 2018. J.A. is the father of both minor children.

**{¶9}** In early 2019, the minor children were placed with Appellee by Job and Family Services because Appellant was arrested for endangering her children by leaving marijuana within reach of the children. Appellant confirmed she was under the influence of marijuana when her children were removed.

**{¶10}** At the time of removal, one child was current on doctor's appointments and vaccines and one was behind. Appellee followed through on medical care for the children, and both are current on doctor's appointments and vaccinations. Appellee keeps Appellant apprised of medical updates with her children.

**{¶11}** Appellant has the children from Tuesday at 9 a.m. through Thursday at noon each week. On Wednesdays, when Appellant is at work, Appellant's mother watches the children.

**{¶12}** Appellant has been living with her parents since April of 2019, when she was evicted from her apartment for drugs.

**{¶13}** Appellant works thirty-four hours a week and pays Appellee child support. On top of the child support, Appellee has refused any other monetary support from Appellant.

**{¶14}** Appellant testified her children are developing well in Appellee's care. She has expressed concern that sometimes the children have greasy hair and dirt behind their

ears. Appellant testified she would like her children back, and that Appellee should get visitation rights.

**{¶15}** Next, J.A. testified his children are developing well while living with Appellee. They are learning more and are better behaved.

**{¶16}** Joyce Brown then testified she worked for forty years at Harrison County Job and Family Services in administration. Brown is friends with Appellee. Appellee has contacted Brown to baby sit the minor children.

**{¶17}** Brown testified the children are developing well under Appellee's care and that the children are well adjusted to living with Appellee.

**{¶18}** After Brown testified, the court drug screened both Appellant and J.A. J.A. tested positive for THC and Appellant was negative for all substances.

**{¶19}** Next, Rindy Brace, a former children services worker at the Welfare Department in Harrison County, testified. Brace and Appellee became friends while working together. Brace met Appellant's minor children in 2019. When she met the children, Brace noted the older of the children, H.A., was developmentally behind with speech and language. Since that time, Brace noted H.A.'s language skills have improved dramatically, even though he can be difficult to understand at times. Brace continued that Appellee relates well to the minor children, and the children are safe and healthy living with Appellee. Brace does not know Appellant and has never observed Appellant with her minor children.

**{¶20}** Next, Appellee testified the minor children are currently living with her. Appellee confirmed her son, J.A., does not reside with her. Appellee was previously employed with Harrison County Department of Job and Family Services and then was

hired by the State as Acting Assistant District Director for the Canton District Office. Appellee retired on July 1, 2008, and is sixty-five years old.

**{¶21}** Appellee described H.A. as being behind developmentally, looked unhealthy, and had a very restrictive diet when the minor children began living with her. Appellee discovered Appellant and J.A. were giving H.A. spoiled milk to drink. Appellee said she has worked with H.A. on vocabulary, counting, reading, playing outside, and his colors. When the children started living with Appellee, H.A. needed a flu shot, and Appellee took him to get a flu shot. H.A. is hard to understand and was recommended for speech therapy a week before the hearing. Appellee also testified the younger of the two minor children, H.A. is developmentally on track. Appellee believes that both children have bonded with her.

**{¶22}** On cross-examination, Appellee said she received the minor children because of criminal issues with Appellant. Appellee admitted that she was worried about having a relationship with the minor children after Appellant and J.A. broke up. Appellee continues that she does not know if Appellant is a good parent, as she has not seen her with her minor children.

**{¶23}** Appellant again took the witness stand and testified she started a relationship with J.A. in December of 2015. Appellant began residing with Appellee in early 2017 for financial reasons. Appellant testified that while living with Appellee, Appellee was controlling. Appellee would try to take over while Appellant was feeding H.A. In October of 2017, Appellant and J.A. moved out because the stress became too much.

**{¶24}** Appellant testified that she is aware of H.A.'s developmental delays. Appellant helps him by practicing ABCs, numbers, and vocabulary. Appellant stated that both she and J.A. have learning disabilities.

**{¶25}** In November of 2018, Appellant's relationship ended with J.A., but J.A. continued living with Appellant and the children. In early 2019, there was a domestic violence incident, and J.A. left the residence.

**{¶26}** Appellant testified that after J.A. left the residence, she continued to let Appellee see the children, even watching them for two days. Appellant started dating Cody Richmond after J.A. moved out. During their relationship he was using marijuana, but she was not aware if he used drugs around her kids. Richmond left Appellant when her legal problems with marijuana started.

**{¶27}** One night while preparing dinner the police arrived at the residence to do a wellness check on the children. They found marijuana on the table. Appellant testified it was Richmond's marijuana and she hadn't seen it on the table. The police placed the children with Appellee; Appellant tested positive for marijuana.

**{¶28}** Appellant was charged with possession of marijuana and child endangerment. The possession charge was dismissed, and the child endangerment charge was reduced to disorderly conduct. Appellant was placed on probation for a year.

**{¶29}** Since being placed on probation, Appellant has passed every drug test. Appellant has completed parenting classes and attends counseling. During her visits with her children, she says the kids are happy to see her, they play outside, work on ABCs, and do activities. Appellee has not complained to Appellant about how the children have been cared for when they visit Appellant.

**{¶30}** Since Appellee has had the children, Appellant has not attended any doctor's appointments but gets updates from Appellee. Appellant has access to the medical records through My Chart. Appellant has stated that the children are not kept clean when Appellee is taking care of them. There have been a few times that H.A. has not been wiped clean after going to the bathroom and that his face and ears have not been washed.

**{¶31}** The hearing was then continued to October 2, 2020. Appellant continued testifying that she had concerns about safety at Appellee's house. Appellee has a swimming pool without a fence around it.

**{¶32}** On cross-examination, Appellant testified Appellee has not failed to get the children medical treatment, keeps Appellant informed of their visits, and that Appellee has set up speech therapy for H.A. Appellant testified that while she was watching H.A., he received a bruise on his eye from carrying sticks and was burned on a space heater.

**{¶33}** Next, Appellee was called back to the witness stand to testify she added a safety cover to her pool, that the pool hasn't been opened since 2018, and that she has no plans to open the pool back up. The cover can hold up to 500 pounds. Appellee continued that the children are active children and can get bruises just from playing. While under Appellant's care, H.A. has come back with bruises to his ear, scratches from running through a rose bush, and got his arm caught between rungs on a space heater. Appellee testified that when Appellant and J.A. lived with her, they did not clean up the house, and that Appellee is still concerned with Appellant's ability to provide a clean home for the children.

{¶34} On November 6, 2020, the magistrate issued its decision finding Appellant and J.A. were unsuitable to parent their minor children. Appellant and Richmond used marijuana during their relationship. Appellant, while under the influence of marijuana was cooking dinner for her children leaving marijuana on a table, in reach of her minor children. This was discovered by the police during a wellness check. Appellant has completed her probation and attended parenting classes and counseling. The children were placed with Appellee when the incident occurred. Appellant is currently residing with her mother, D.L. When Appellant was younger, she was removed from D.L.'s care at the age of three following numerous sexual abuse cases in which Appellant was the victim. The magistrate's decision also provided that the minor children are to have no contact with Scott Sanders, Nathanial Coverdale, Timothy Coverdale, Jr. or Timothy Coverdale, Sr.

{¶35} On January 27, 2021, the trial court overruled Appellant's objections to the magistrate's decision and granted legal custody of the minor children to Appellee

## ASSIGNMENT OF ERROR

{¶36} Thereafter, Appellant timely filed a notice of appeal. She herein raises the following Assignment of Error:

{¶37} "I. THE COURT ERRED IN DETERMINING THAT THE APPELLANT WAS UNSUITABLE AS A PARENT AND SHOULD NOT HAVE CUSTODY OF HER MINOR CHILDREN."

## I.

{¶38} In Appellant's sole Assignment of Error, Appellant argues the trial court abused its discretion regarding its determination that Appellant was not a suitable parent. We disagree.

**{¶39}** An appellate court reviews disposition of child custody matters for an abuse of discretion on the part of the trial court. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 73-74. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable, not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. Appellate courts reviewing evidence in custody matters do not function as fact finders; we neither weigh the evidence nor judge credibility of witnesses. *Dinger v. Dinger*, 5th Dist. Stark No. 2001CA00039, 2001-Ohio-1386. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Id*. As custody issues are some of the most difficult and agonizing decisions a trial court judge must make, the trial court judge is given wide latitude in considering all the evidence. *Girdlestone v. Girdlestone*, 5th Dist. Stark No. 2016CA00019, 2016-Ohio-8073, ¶12 citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). However, granting legal custody, where parental rights are not terminated, is not as drastic a remedy as permanent custody. *In re D.H.*, 10th Dist. No. 11AP-761, 2012-Ohio-2272, ¶9.

**{¶40}** R.C. 2151.23(A)(2) gives exclusive jurisdiction to the juvenile court "to determine the custody of any child not a ward of another court of this state." In *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047, syllabus, the Supreme Court of Ohio held:

> In an R.C. 2151.23 child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability that is, without first determining that a preponderance of the evidence shows that the parent

abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.

**{¶41}** Therefore, before awarding legal custody to a non-parent, a trial court must ordinarily make a finding that each parent is unsuitable. *In re L.P.*, 5th Dist. Muskingum No. CT2016-0045, 2017-Ohio-52, ¶18.

**{¶42}** In its journal entry filed January 27, 2021, the trial court concluded through adopting the magistrate's decision that both J.A. and Appellant are unsuitable to parent the minor children. This finding was based upon several findings of fact about Appellant which were all supported by the record including, that while doing a wellness check on the children, the police discovered Appellant and children were home, Appellant was cooking dinner under the influence of marijuana, and that there was marijuana on the kitchen table accessible by the children. The trial court also found that Appellant had been charged with child endangerment and possession of drugs (though the charges were reduced to disorderly conduct) in relation to the incident. Appellant lives with her mother and when Appellant was a child, Appellant was removed from her mother's care because of sexual abuse cases in which Appellant was the victim. During Appellant's first overnight visit with the children, H.A. was burned by a space heater. The minor children are bruised while in Appellant's care. H.A. was behind on his shots when the children were placed with Appellee. Appellee now has H.A. up to date and has kept Appellant apprised of the children's medical care. H.A. has been diagnosed with a speech delay, and Appellee has enrolled H.A. in speech therapy. The children are developing well in Appellee's care. J.A.

has little contact with the children. J.A. has been kicked out of Appellee's house multiple times due to J.A.'s behavior. Appellant and J.A. were giving H.A. spoiled milk to drink. Appellee has spent significant time with the minor children. They have bonded with Appellee. The children are vulnerable, both under age five, and are unable to protect themselves. They rely on adults to provide their daily needs.

**{¶43}** Upon review of the evidence presented, we cannot say the trial court abused its discretion in finding Appellant and J.A. unsuitable to parent the minor children. We find the record contains substantial credible and competent evidence to support the decision.

**{¶44}** Appellant's sole Assignment of Error is overruled.

**{¶45}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby, affirmed.

By: Wise, John, P. J.

Delaney, J., and

Wise, Earle, J. concur.

JWW/br 1006